

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MWG/SMS/IC
F. #2024R00654

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 16, 2025

<u>By ECF and E-Mail</u>

The Honorable Clay H. Kaminsky
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Robert Stroud
       Criminal Docket No. 25-314 (RER) (CHK)

Dear Judge Kaminsky:

  The government respectfully submits this letter in brief response to the defendant Robert Stroud's letter motion to modify the conditions of bail entered by Magistrate Judge Merkl on November 6, 2025, to remove the condition of home incarceration and to impose a curfew. <u>See</u> ECF Nos. 385, 391. Given the Court's order granting the motion, the government is seeking reconsideration. For the reasons set forth below, the defendant's motion should be denied.

  I. <u>BACKGROUND</u>

  As detailed in the government's detention memorandum dated October 23, 2025, the evidence against the defendant—including, among other things, text messages from the defendant's own Apple iCloud account—establishes that from 2019 through 2025, the defendant was a primary organizer of a national fraud scheme involving rigging poker games that caused losses of over $7 million. The defendant organized rigged poker games, recruited professional athletes and other members of the cheating teams into the scheme, supplied cheating technology to participants to use in rigged games, participated himself as a member of the cheating teams, and laundered tens of thousands of dollars in criminal proceeds to co-conspirators. As part of the scheme, in September 2023 the defendant also orchestrated a gunpoint robbery of a rigged shuffling machine from an individual referred to in the indictment as John Doe #7, for which he is charged with Hobbs Act robbery conspiracy.

  On October 23, 2025, law enforcement agents executed a search warrant at one of the defendant's residences in Miami, Florida. Among other things, the agents recovered poker tables and related accessories for illegal gambling (<u>e.g.</u>, chips, cards, chip trays, and a gambling

ledger), as well as equipment useful for cheating at poker, including a camera hidden in a vent above a poker table and a video recording device.

 

On the same day of the search of the defendant's residence in Miami, the defendant was arrested at another one of his residences in Louisville, Kentucky. The defendant's initial appearance on the indictment was in the Western District of Kentucky on October 23, 2025. See 25-MJ-663. At that time, based on the defendant's extensive involvement in the charged scheme—including in planning a crime of violence (the gunpoint robbery)—the government sought the defendant's detention. The defendant was detained pending a detention hearing that was held on October 28, 2025. In advance of the detention hearing, the defendant reported to Pretrial Services that he had no monthly income, had been unemployed since 2010, and had been receiving $900 per month in disability payments. He further reported that he has no assets but that his wife owned four homes. Pretrial Services in Kentucky recommended that the defendant by placed on home incarceration with location monitoring, and the defendant was subsequently released on home incarceration with a $100,000 bond.

On November 6, 2025, the defendant was arraigned on the indictment in the Eastern District of New York. During the arraignment, among other things, the defendant argued against the continuity of the home incarceration portion of his conditions of release. The government disagreed, and Judge Merkl ultimately ordered the defendant to be continued on home incarceration.

II. DISCUSSION

Courts have found that judicial "authorization to amend a release order" under § 3142(c) arises where there is "a changed situation or new information [that] warrant[s] altered release conditions." United States v. Dzhamgarova, No. 21-CR-58 (MKV), 2021 WL 3113036, at *1 (S.D.N.Y. July 21, 2021) (internal quotation marks and citations omitted); see also United States v. Falcetti, No. 02-CR-140 (ILG), 2002 WL 31921179, at *1 (E.D.N.Y. Oct. 31, 2002) ("Conditions of bail should properly be modified if a substantial change in circumstances as they existed at the time bail was fixed is clearly shown."). In his letter motion, defense counsel raises two grounds for modifying the defendant's bail conditions, neither of which is a changed circumstance and neither of which has merit. Importantly, while the defendant seeks to remove the home incarceration condition recommended by Pretrial Services and ordered by Judge Merkl, he articulates no need to leave his residence.

First, the defendant argues that his compliance with the terms of his supervision over the past seven weeks warrant a relaxation of those conditions. Putting aside the brevity of the period, compliance with conditions of release is not "new and material information" for

purposes of revising those conditions. See, e.g., United States v. Esposito, 354 F. Supp. 3d 354, 361 (S.D.N.Y. 2019) (noting in the context of reopening a detention hearing that the defendant's "conclusion that his record of compliance constitutes evidence of his intent not to flee is his 'own evaluation of his character' and thus not a basis for reconsideration.").

Second, the defendant claims that before the onset of his medical condition in or around 2010, he was gainfully employed.[1] At the outset, the defendant concedes that he is not currently legitimately employed, which was one of the grounds Judge Merkl indicated supported the continuation of home incarceration. But even more troubling, as detailed above, the government's evidence establishes that for at least the past seven years, the defendant has been employed, albeit in a complex criminal fraud scheme. To be sure, as part of his role in the scheme, the defendant travelled around the country, including to Florida and Long Island, to defraud his victims. The defendant's claims to the contrary—and his spurious claim that he has no income or assets, but his wife has substantial property interests—is an affront to Pretrial Services and the Court and is a clear warning that the defendant cannot be trusted with less stringent conditions of pretrial release.

In addition, the government lacks sufficient information about the property being put forth for the bond. The government has not been able to determine whether the property was purchased with criminal proceeds or whether criminal proceeds were used pay any portion of the mortgage towards the property, and the property itself has not yet been properly posted as collateral for the bond. According to bank statements, the proposed property is also the listed business address for a business bank account controlled by the defendant that was used to launder proceeds from the charged crimes as well as make payments to co-conspirators. Indeed, although the defendant purports to have no meaningful assets, bank records show that during the charged time period, the defendant's "business" account received and transferred over $100,000 during the course of a single month. The purported business account is particularly concerning given the defendant's self-reporting to Pretrial Services in connection with his bail report that he has been unemployed for the past fifteen years and reported no assets in his name. In addition, given that the defendant's wife appears to be the individual who is holding all property associated with the defendant's criminal proceeds, it is fundamentally unclear to the government how the defendant's wife could properly serve as a suretor.

Two prior federal judges—Judge Edwards in the Western District of Kentucky and Judge Merkl here in the Eastern District of New York—each reviewed the government's detention memorandum, the Pretrial Service reports, and the arguments that defense counsel renew again here, and determined that home incarceration was appropriate to both assure the defendant's appearance and the safety of the community. The defendant has provided this Court with no reason to depart from those decisions.

---

[1] The defendant does not claim that he is unable to obtain any necessary medical treatment while on home incarceration, as the bond conditions specifically permits travel for "medical necessities," among other things. See ECF No. 274 at 1.

III. CONCLUSION

For these reasons and the reasons set forth in the government's detention letter, the government respectfully submits that the Court reconsider its decision and that the defendant's motion to modify his bail conditions be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: _____/s/_____
Michael W. Gibaldi
Sean M. Sherman
Irisa Chen
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (CHK) (by ECF)
Vincent Martinelli, Esq. (by ECF)